

**ORDERED in the Southern District of Florida on January 13, 2022.**

**Mindy A. Mora, Judge
United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov**

| | |
|---|---|
| In re: | Case No.: 20-13066-MAM |
| David Joseph Manger, | Chapter 13 |
| Debtor_____/ | |

## MEMORANDUM OPINION AND ORDER DENYING MOTION FOR RECONSIDERATION (ECF NO. 142)

Sometimes, what seems to be perfectly obvious, isn't. Perceptions vary.

It is the Court's responsibility to look with the eyes of an impartial body, to assimilate all forms and versions of the "truth" as it is perceived by the parties and reconcile those conflicting perceptions not only with the law, but also with the greater principles of equity that underpin the law.

Just as for every rule there is an exception, for every contract that seems to be iron-clad, there is still some type of action or inaction that can, unfortunately, undo the language that the parties have so carefully crafted.

And such is the case here. Although it is true that parties can contract for almost anything, they cannot escape application of the law which, as it happens, includes principles of equity.

Creditor JS-TF, LLC ("Creditor") contends that the plain language of a promissory note (the "Note") trumps all forms of equitable relief and seeks reconsideration of a prior order (ECF No. 140) (the "Prior Order")[1] that sustained David Joseph Manger's ("Debtor") objection to Creditor's claim. Because the Court carefully considered all relevant documents and testimony, including the Note, the Court denies reconsideration.

## BACKGROUND

The Court will briefly summarize the basic dispute between the parties.[2] Prepetition, Creditor and Debtor entered into several loan agreements secured by parcels of real property. One of those business transactions involved a property familiarly known as 10490 Marina Way. That property is Debtor's primary residence (the "Residence").

---

[1] The full name of the Prior Order is: *Order Sustaining Debtor's Objection to Proof of Claim #13-1 (ECF No. 26) and Overruliing as Moot JS-TF, LLC's Objection to Confirmation of Debtor's First Amended Chapter 13 Plan (ECF No. 24).*

[2] The Prior Order provides an expanded discussion of background facts.

Debtor fell behind on payments for the Residence. Because Creditor's principals were longtime acquaintances and friends, Debtor initially tried to negotiate an informal repayment plan out of court. For reasons that were never made clear to this Court, Creditor declined to continue what seemed to be amicable discussions with Debtor and filed a foreclosure action. Before the state court issued a final judgment of foreclosure, Debtor filed for chapter 13 bankruptcy relief.

Debtor acknowledged his obligation to Creditor by listing it on his schedules and statements. Creditor disagreed with the scheduled amount and filed a proof of claim (the "Claim"). Debtor objected to that Claim and the ensuing factual dispute led to a two-day evidentiary hearing (the "Hearing") before this Court.

## THE PRIOR ORDER

After the Hearing, the Court reviewed the entire record, including all underlying loan documents, exhibits, and Hearing transcripts. Because the parties failed to provide the Court with documentary or testimonial evidence supporting the principal amount of the obligation as of the date of the monetary default, the Court also invested significant resources computing the amount of the Claim. In the unpublished (but lengthy) Prior Order, the Court sustained Debtor's objection to the Claim, allowed the Claim in a reduced amount, reserved jurisdiction to consider what portion of the Claim might be permitted as reasonable attorney's fees and costs, and directed Debtor to file an amended plan providing for payment of the Claim as modified by the Prior Order.

RECONSIDERATION STANDARD

I. **Statutory and Procedural Standards**[3]

Within the context of reconsideration of an order sustaining or overruling an objection to claim, the legal standard is surprisingly opaque. Section 502(j) of the Bankruptcy Code provides that "[a] claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case." As with other sections of the Bankruptcy Code, "cause" is undefined in §502(j).

Bankruptcy Rule 3008 simply acknowledges that "[a] party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate" and, after a properly noticed hearing, the court shall enter an appropriate order. For further guidance, the Court thus turns to Bankruptcy Rule 9024, which addresses reconsideration of orders.

Rule 9024 incorporates by reference Rule 60(b) and permits reconsideration for the following reasons:

1. mistake, inadvertence, surprise, or excusable neglect;
2. newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
3. fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
4. the judgment is void;
5. the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
6. any other reason that justifies relief.

---

[3] In this Opinion, the Court will refer to the Federal Rules of Bankruptcy Procedure as "Bankruptcy Rules" and the Federal Rules of Civil Procedure as "Rules".

4

Putting two and two together, the Court surmises that any set of facts permitting reconsideration under Rule 9024 would also suffice for "cause" under §502(j). Unfortunately, this logical path does not mesh with Creditor's arguments.

Although it is clear that Rule 9024 can (and probably should) apply, Creditor raised none of the reasons stated in Rule 9024 as a justification for reconsideration. Instead, Creditor sought refuge in Bankruptcy Rule 9023, which incorporates Rule 59 and permits a "motion for a new trial or to alter or amend a judgment [to] be filed … no later than 14 days after entry of judgment."

Federal Rule 59 provides:

(a) In General.
  (1) *Grounds for New Trial.* The court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows:
    (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or
    (B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.
  (2) *Further Action After a Nonjury Trial.* After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment.
(b) Time to File a Motion for a New Trial. A motion for a new trial must be filed no later than 28 days after the entry of judgment.
(c) Time to Serve Affidavits. When a motion for a new trial is based on affidavits, they must be filed with the motion. The opposing party has 14 days after being served to file opposing affidavits. The court may permit reply affidavits.
(d) New Trial on the Court's Initiative or for Reasons Not in the Motion. No later than 28 days after the entry of judgment, the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion. After giving the parties notice and an opportunity to be heard, the court may grant a timely motion for a new trial for a reason not stated in the motion. In either event, the court must specify the reasons in its order.

> (e) Motion to Alter or Amend a Judgment. A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.

Creditor's reference to Rule 59 is not without precedent. Because a bankruptcy case is an amalgamation of many smaller controversies, there has been some confusion over whether Bankruptcy Rule 9023 or Bankruptcy Rule 9024 applies in the context of a final court order issued in a main bankruptcy case.

In certain instances, like stay relief, clear guidance exists. *See, e.g., Ritzen Group, Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 589-90 (2020) (bankruptcy order denying stay relief was final, appealable order equivalent to a judgment). In other instances, litigants are left to their own devices to ascertain whether Rule 59 or 60 ought to apply. Perhaps sensing this confusion, courts have applied Bankruptcy Rule 9023 (and thus Rule 59) where an order results in a final determination of a contested matter and the affected party files a motion for reconsideration within the time permitted for filing an appeal. *See United Student Funds, Inc. v. Wylie (In re Wylie)*, 349 B.R. 204, 209 (B.A.P. 9th Cir. 2006). In doing so, courts typically have not specified a reason for application of Rule 59 other than the finality of the underlying order and resulting "analogous" nature of the reconsideration motion to a motion for a new trial or to alter or amend a post-trial judgment. *See, e.g., id.; c.f. Kellogg v. Schreiber (In re Kellogg)*, 197 F.3d 1116, 1119 (11th Cir. 1999) (discussing finality of sale order as basis for application of Rule 59).

In this instance, the Court is spared having to wade into the morass of which rule ought to apply because Creditor filed its motion within the time allotted for

taking an appeal and cited only one possible basis for reconsideration: Rule 59. Specifically, Creditor asks the Court to alter and amend its prior ruling under Rule 59(e).

Although the Court does not specifically hold that Rule 59(e) provides the correct procedural pathway in this context, it will not penalize Creditor for what amounts to a distinction without a difference in this Bankruptcy Case. The Court will assume arguendo that Creditor's arguments address the "cause" standard of §502(j) and analyze Creditor's reconsideration motion (ECF No. 142) (the "Reconsideration Motion") under the more lenient standard of Rule 59 instead of the more stringent standard provided by Rule 60(b).

## II. Appropriateness of Reconsideration

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Jean-Felix v. Chicken Kitchen USA, LLC,* No. 10-23105-CIV, 2013 WL 2243966, at *2 (S.D. Fla. May 21, 2013) (citing *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir.2007)) (internal quotation marks omitted). Courts typically grant motions for reconsideration to accommodate (1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct clear error or manifest injustice. *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002). Substantial discretion rests with this Court in its analysis of the Reconsideration Motion. *Frank Keevan & Son, Inc.,* 107 F.R.D. 665, 670-71 (S.D. Fla. 1985); *see also Medley v. Westpoint*

*Stevens, Inc.*, 162 F.R.D. 697, 698-99 (M.D. Ala. 1995) (describing discretion of court to weigh potential for manifest injustice).

Creditor has not argued an intervening change in the law, so the first potential basis for reconsideration is inapplicable. Similarly, Creditor does not assert the existence of new evidence, which eliminates the second basis. Only the remaining basis, clear error or manifest injustice, remains. This is the basis upon which Creditor now seeks reconsideration.

### III. Clear Error or Manifest Injustice

The line between the concepts of "clear error" and "manifest injustice" is blurry. Presumably, clear error by a court leads to manifest injustice. Case law addressing this basis for reconsideration typically does so by focusing upon the Court's misapprehension of key issues or logical errors. *Campero USA Corp. v. ADS Foodservice, LLC*, 916 F. Supp. 2d 1284, 1292-93 (S.D. Fla. 2012) ("[C]lear error or manifest injustice occurs where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension….") (internal citations and quotation marks omitted). Because instances of manifest injustice are rare, motions seeking reconsideration on that basis should be equally rare. *Id.*

"Manifest error does not mean that one does not like the outcome of a case, or that one believes the court did not properly weigh the evidence." *Daughtry v. Army Fleet Support, LLC*, No. 1:11CV153-MHT, 2014 WL 466100, at *2 (M.D. Ala. Feb. 5, 2014)); *Marshall v. Dunn*, No. 2:15-CV-1694-AKK, 2021 WL 3603452, at *1-2 (N.D.

8

Ala. Aug. 13, 2021) (quoting same). Courts will not consider new arguments or evidence that the moving party could have raised before the decision issued but failed to present. *Bannister v. Davis*, 140 S. Ct. 1698, 1703 (2020). Rule 59(e) exists to provide courts with a corrective function and is not a vehicle for relitigation of old matters. *Id*.

## ANALYSIS

Creditor's arguments for reconsideration are best summarized as two related points: first, the terms of the Note govern the calculation of the Claim; and second, Creditor's default notices (each, a "Notice") were "good enough" to support Creditor's continued entitlement to default interest and late fees. The Court will take each argument in turn.

### I. The Note

The Court began its analysis in the Prior Order with the plain language of the Note, as is customary. The Court's analysis, however, was not confined to the Note; if it were, there would never be a need for an evidentiary hearing to interpret any contract. This is the point that appears to have escaped Creditor.

Creditor correctly points out that the Note contains an anti-modification clause. This is true. Creditor then argues that Florida courts routinely enforce anti-modification clauses. This is also true. If the Court had decided the issues in this bankruptcy case in a vacuum, without reference to the record or consideration of the demeanor and credibility of the witnesses, the Court might have been persuaded by this logic.

But that is not what the Court did.

In arriving at its conclusions in the Prior Order, the Court carefully analyzed all aspects of the record. The Court takes its role as the arbiter of fact seriously. This means that, although it may be difficult or inconvenient to wade through an entire record of documents and testimony, that is precisely what the Court must do. And it did.

Prior to going any further, the Court will address the applicable legal standard regarding interpretation of contracts with anti-modification clauses.

A. <u>Anti-modification Clauses</u>

About sixty-five years ago, the Florida Supreme Court considered the primary issue raised by Creditor today, which is the circumstance under which a Court may decline to enforce a contract as written. *Prof'l Ins. Corp. v. Cahill,* 90 So. 2d 916 (Fla. 1956). Although a well settled rule exists that "an executory or parol agreement will not be permitted to abrogate or modify a written or sealed instrument," the rule is not without limitations. *Id.* at 917-18. Recognizing that administration of justice sometimes requires flexibility, the *Cahill* court concluded that "[a] written contract or agreement may be altered or modified by an oral agreement if the latter has been accepted and acted upon by the parties in such a manner as would work a fraud on either party to refuse to enforce it." *Id.* Under these circumstances, an oral modification is possible even if the agreement contains an express provision prohibiting alteration except in writing. *Id.*

10

B. Modification Through Conduct

This Court's Prior Order contains extensive analysis concluding that the evidence demonstrated that the parties modified the Note through their conduct. The parties then reinforced the modified terms of the Notes over the span of many years and through countless communications. The modifying behavior included Creditor's receipt of regular payments for years following the first alleged default, continued issuance of payment reminders, and acceptance of payments without the imposition of late fees. After meticulously reviewing the entire record, including the amount and timing of every single payment ever made by Debtor and accepted by Creditor for the Residence, the Court determined that enforcing the plain language of the Note after years of contradictory behavior by <u>both</u> parties would work a fraud upon Debtor.

This conclusion fulfills the *Cahill* standard. The Court need go no further in its analysis of Creditor's primary argument for reconsideration.

## II. The Default Notices

For completeness, the Court will indulge in a brief discussion of Creditor's second argument, the sufficiency of the Notices. Creditor issued two Notices: one in 2012 and another in 2019. For simplicity, the Court will refer to each Notice by the year in which it was issued.

A. The 2012 Notice

The 2012 Notice is a legal nullity because the parties subsequently modified the terms of the Note through their ongoing and contradictory conduct. Creditor accepted payment on the Note through January 23, 2018. Creditor thus chose to

11

waive any assertion of default in favor of cold, hard cash on a regular basis. Concluding otherwise at this late juncture would work a fraud upon Debtor, who understandably relied upon Creditor's continued acceptance of payments.

B. <u>The 2019 Notice</u>

The 2019 Notice is different. After issuance of that Notice, Creditor did not accept additional payments. So, in theory, the 2019 Notice created a new landscape for enforcement of the Note. What the 2019 Notice could not do, however, was rewrite history.

Over the course of not one, but many years leading up to 2019, Creditor issued payment reminders and accepted payments upon the Note. In so doing, Creditor indicated that certain terms of the Note were, in essence, of little import. Other actions, including accepting "sweat equity" in lieu of payment and waiving late fees, all contributed to Debtor's understanding that certain terms of the Note were, more or less, not being enforced by Creditor.

At the Hearing, Creditor's principal argued vociferously that it relied solely upon the terms of the Note, and that those terms should govern. When questioned about evidence of accommodations and acts inconsistent with the terms of the Note, however, Creditor's principal grew visibly uncomfortable. He declined to address many aspects of Debtor's testimony. He fidgeted. He was evasive in response to direct questions. In other words, he undermined the credibility of his own testimony through his obvious discomfort in addressing factual details under oath. Creditor's

inability or unwillingness to testify about the potential of oral modification spoke volumes. Sometimes, it's the story that isn't told that matters most.

At this point, the Court cannot emphasize enough the importance of the Court observing demeanor and assessing the credibility of witnesses at an evidentiary hearing. Without specifically opining as to what may have occurred in this instance, the Court will simply state once more, as it did in the Prior Order, that while testifying during the Hearing, Debtor appeared wholly candid and credible, but Creditor's principal did not.

With that backdrop, the Court turns to the precise language of the 2019 Notice. That Notice states an amount due[4] and announces Creditor's intent to accelerate the Note. It does not state that late fees will be imposed, nor does it clarify Creditor's intent to seek default interest. After its own behavior demonstrating that the terms of the Note were, at best, a rough template, Creditor was remiss in not clearly stating in the 2019 Notice precisely *which* terms of the Note it now intended to enforce. Because the 2019 Notice did not specify any intent to seek default interest or late fees, the Court concluded that those terms were effectively waived by Creditor's prior conduct over the course of many years.

### III. <u>Final Points</u>

Based upon the Court's extensive prior analysis and Creditor's failure to raise arguments that go beyond that analysis, the Court concludes that reconsideration is

---

[4] See the Prior Order at p. 11 (describing lack of documentary evidence or credible explanation to support asserted 36% increase in principal balance of the Note).

13

inappropriate. With that determination made, there is no need to delve into the details of Creditor's alternative calculations of the Claim. The Prior Order provides the appropriate amount of the Claim.

Before concluding, the Court observes that another firm foundation exists for denial of reconsideration: Creditor's failure to raise any new arguments that could have been raised during the Hearing or, at a minimum, in post-trial briefing. Creditor does not argue (as it cannot) that any of the arguments raised in the Reconsideration Motion derive from new, previously unavailable evidence. As a result, even if Creditor disagrees with this Court's interpretation of the Note, Creditor's failure to provide the Court with a sufficient evidentiary basis for an alternative interpretation is fatal to the Reconsideration Motion.

The Court declines to address Creditor's request for attorney's fees in this Opinion and will address that request in a separate ruling.

## CONCLUSION

The Court declines to reconsider the Prior Order. Accordingly, it is hereby ORDERED that the Reconsideration Motion is DENIED.

###

Copy to:
Craig A. Pugatch, Esq.

*Attorney Pugatch is directed to comply with all applicable rules regarding service of this Order.*